## SLANDER WHEN UTTERED AGAINST A GROUP.

Court of Common Pleas of Hamilton County.

CHARLES STONE, A MINOR, ETC., V. EDWARD J. RUTHMAN.

Decided, June 5, 1919.

*Slander—Where the Defamatory Words were Spoken to Persons Collectively—Single Member of the Group may Maintain an Action, When—Publication of the Defamatory Words—Abusive Language not Slanderous, When.*

1. While the utterance of defamatory words against a number or class of persons does not afford a basis for an action for slander where brought by the group as a whole, any single member of the group may recover, if he can satisfy the jury that he was the one against whom the language complained of was aimed.

2. Whether publication can be claimed for defamatory language uttered of and concerning three persons and heard by none except the three, *Quaere.*

3. The use by an employer when speaking to a group of three of his striking employees, where the only difference between the employer and the employees is the number of working hours, of the language, "You are nothing but a bunch of crooks and thieves," shows no intention to impute a crime against the men addressed and, therefore, does not afford a basis for an action for slander. The language was abusive but nothing more.

*John Thorndyke,* for plaintiffs in error.
*Dolle, Taylor, O'Donnell & Geisler,* for defendant in·error.

DARBY, J.

Error to the Municipal Court of Cincinnati.

The plaintiff in error brought suit in the municipal court against the defendant in error for an alleged slander, the language charged being, "You (meaning plaintiff and plaintiff's friends then with him) are nothing but a bunch (meaning plaintiff and plaintiff's friends then with him) of crooks and thieves."

At the conclusion of the plaintiff's evidence upon motion of the defendant the court rendered the following decision:

"The Court rules·that these words were spoken collectively. The evidence shows that no one was present except these three men and the defendant, and under the rule of law, they must be uttered within the hearing of a third party or parties; the testimony shows that no one else was present; therefore the allegation of slander has not been sustained, and the Court grants the motion of defendant for an instructed verdict."

Such verdict was rendered by the jury, followed by a judgment in favor of the defendant; this proceeding· seeks a reversal of such judgment.

Briefly, the facts are, that Stone, the plaintiff, and two companions, Hayes and Kruse, were employees of the Ruthman Machinery Company, with which the defendant was connected; that some ten days before the alleged slander said persons with others, went on a strike, ceased their work for the company, and during the strike and up to the day alleged, acted as pickets at the company's plant; that on the morning in question the three referred to, including the plaintiff, were so picketing one of the entrances to the plant when defendant came to the place of business, entered it and afterwards came to the front door, near which plaintiff and his associates were stationed; defendant ordering them off the sidewalk, to which Hayes replied that they did not have to go; thereupon, defendant told them that they would have to keep moving, to which Hayes replied that they were moving,

and Ruthman then said as charged in the petition, "You are nothing but a bunch of crooks and thieves."

The plaintiff did not appear at the trial; he was then in some branch of the United States service. The only witness to prove the direct statement by the defendant was Hayes, and he said on his cross-examination that during the time of the strike that he and others of the strikers talked with the defendant and that he inquired of them why they left the factory. Hayes spoke of having one fuss with the defendant; whether that referred to the morning of the slander or another occasion is not clear. Hayes further stated that the defendant was angry at the time, but that he, Hayes, and his companions were in good humor.

It is further in testimony that the defendant had no disagreement of any kind with the individual employees, but that there was a controversy between him and the Machinist's Union. There was no claim on the part of Hayes or any other witness for the plaintiff that they left the employ of the company because of any other disagreement or difficulty than the number of hours per week they should work. There was no suggestion in the testimony that anything had been stolen from the Ruthman Company. The record shows that Hayes knew of no theft and did not believe that any of the men included in defendant's statement were thieves or crooks.

On page 7 of the bill of exceptions, in the testimony of Hayes appears the following question and answer:

"Q. Do you know what either the union or you men had done to cause Ruthman to say that you were a bunch of thieves and crooks?"

"A. Only thing I could tell was because his father came around and tacked up a sign and said 52 hours shall constitute a week's work. We stayed there and worked a month and they would not come to any agreement and we went out."

The testimony of Hayes was that he, Stone and Kruse were the only persons who heard the statement of the defendant, charged as slander.

It was claimed in argument that inasmuch as the statement directed to the three men was "You are a bunch of crooks and

thieves,'' that the plaintiff had no cause of action; in other words, that the statement was ''You are a bunch,'' indicating the men collectively, and therefore that there was no individual slander of the plaintiff; that the statement was directed to the three men and was the equivalent of saying, ''You are all crooks and thieves,'' and while the statement was directed to them collectively, the plaintiff has charged in his bill of particulars by proper innuendo, that he was accused of being a crook and thief.

In *Tedtman* v. *Hancock,* 1 C. C., 238, it was held that,

''To say to, and of another in a public discourse spoken in the presence and hearing of others: 'You are a fraud. You do not pay your debts. You are a thief and a fraud,' is *prima facie* actionable slander.''

The rule is well settled that where one utters words imputing crime, etc., to a class without singling out an individual, there can be no action by the individual, but, where slanderous words are spoken of a number of persons and the plaintiff alleges that he was included within the number and can by proper evidence satisfy the jury of that fact, he is entitled to recover.

Newell Slander and Libel, Section 488, states the rule thus:

''Where defamatory words reflect upon a class of persons impartially, and there is nothing to show which one is meant, no action lies at a suit of a member of the class. But any member of the class who can prove that the words were intended to apply to him can recover.''

An early case upon this subject is *The King* v. *Alme and Nott,* 3 Salkeld, 244, where it is said:

''Where a writing which inveighs against mankind in general, or against a particular order of men, as for instance, men of the gown—this is not libel, but it must descend to particulars and individuals to make it a libel.''

In *Jones* v. *Hulton & Company,* 2 K. B. (1909), 444, in the discussion by Farwell, L. J., on page 481, is the following language:

''If the libel consisted in defamation of a number of individuals described generally, that is to say, 'as the owners of some of the

Irish factories,' as in *LeFanu* v. *Malcomson,* 1 H. L. C., 637, every member of the class who could satisfy the jury that he was a person aimed at and defamed could recover; and I can see no reason why two or more persons of the name of Artemus Jones who produced evidence from their acquaintances and others in different parts of the kingdom similar to that produced by the plaintiff in this case, the other circumstances being similar, should not recover."

In *LeFaun* v. *Malcomson, supra,* the court say:

"Though defamatory matter may appear only to apply to a class of individuals, yet if the descriptions in such matter are capable of being, by innuendo, shown to be directly applicable to any one individual of that class, an action may be maintained by such individual in respect of the publication of such matter."

In the case of *Byers* v. *Martin,* 2 Col., 605, the facts were that the plaintiff was a member of a jury in a criminal action, and after a verdict of not guilty, the defendant published in a newspaper the following:

"We are not a little surprised at Judge Wells' lenient charge in the case. We are still more so at the infamous verdict of this jury"   *   *   *   "we can not express the contempt which should be felt for these twelve men, who have thus not only offended public opinion, but have done injustice to their own oaths."

The plaintiff alleged that the language quoted was uttered concerning him. The court say:

"A publication which denounces a verdict as infamous, and declarations that, 'we can not express the contempt which should be felt for these twelve men who have thus not only offended public opinion, but have done injustice to their own oaths,' is directed against the jurors individually."

Sustaining the view that where language is uttered concerning a number or class of persons, that one of them is entitled to recover if he can show that he is included within the class or number, are the following cases: *Weston* v. *Commercial Advertising*

*Assn.,* 184 N. Y., 479; *Ryckman* v. *Delavan,* 25 Wend., 186, 198; *Sumner* v. *Buel,* 12 Johns., 474; *Wofford* v. *Meeks et al,* 129 Ala., 349, 358; *Comes* v. *Cruce,* 85 Ark., 79, 83; *Marsden* v. *Henderson,* 22 U. C. Q B., 585.

The defendant in error claimed in argument that there was no publication of the alleged slander, because it was spoken of the three men to them, and that no other person heard the language; in other words, that the persons slandered were the only hearers of the slander.

It is clear that publication is essential to an action for slander. In any case in which no one hears the words except the person of whom they are spoken, there is no action because no publication. No authority has been presented or found which covers a similar situation to this one.

It would seem that for one to say of several persons, ''You are thieves,'' or to say in their presence other words imputing a crime might be damaging to one or more of them in the extreme, but under the circumstances of this case the court is bound to find that there was no slander for another and a different reason.

The law of this state follows the general rule that language to be actionable as imputing a crime must be such as that the hearers of the language understand that a crime is imputed.

In *Brown* v. *Myers,* 40 Ohio St., 99, the first syllabus is as follows:

''An action of slander can not be maintained for words which impute a crime, where, from all that was said at the time the words were spoken, it appears that the words had relation to a transaction that was not criminal, and that they must have been so understood by the hearers.''

The language in the case last above referred to was, ''Myers is a thief, and ought to be in the penitentiary long ago.'' These words were spoken in connection with an explanation about a transaction of Myers in connection with an assessment paid after a fire, and also with reference to some other transaction which the hearer knew and understood was not of a criminal character.

On page 101 of the opinion of the court, will be found the following.

"It is for the jury to determine what meaning the words were spoken and understood; but where the words with all that was said in the same conversation show no intention to impute a crime, but a total absence of such intention, the plaintiff's case fails in its proof as a matter of law."

As stated, the plaintiff and his companions were employees of the defendant. They had ceased their employment and gone upon strike, not because of any accusation of theft, but solely because they were objecting to the hours of employment, and Hayes in his testimony says that there was no complaint or trouble of any kind between the defendant and his company, and the plaintiff and his associates, except as it grew out of the strike, and that the defendant had inquired of them why they had ceased their employment.

The whole transaction was known to the plaintiff and his associates, and even though there were publication of the charge against the plaintiff in the presence of his two companions, as a matter of law, all that was said and done shows no intention to impute a crime, but a total absence of such intention. The language was abusive, used in anger, but nothing more was intended or understood.

It follows that the court below was correct in ordering a verdict for the defendant upon the plaintiff's testimony.

The judgment will be affirmed.